**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **SHARON MICHAEL** | : | |
| **230 Snyder Street** | : | **CIVIL ACTION** |
| **2nd Floor** | : | |
| **Orange, NJ 07050** | : | |
| | : | **NO.:** |
| **vs.** | : | |
| | : | **PLAINTIFF REQUESTS A TRIAL** |
| **CANTERBURY AT CEDAR** | : | **BY JURY** |
| **GROVE REHABILITATION** | : | |
| **AND CARE CENTER LLC** | : | |
| **398 Pompton Avenue** | : | |
| **Cedar Grove, NJ 07009** | : | |
| | : | |

**COMPLAINT**

**I.      PRELIMINARY STATEMENT:**

1.      This is an action for an award of damages, declaratory and injunctive relief, attorneys' fees and other relief on behalf of Plaintiff, Sharon Michael.  Plaintiff is a former employee of Defendant, Canterbury at Cedar Grove Rehabilitation and Care Center LLC, who has been harmed by the Defendant's discriminatory employment practices.

**2.**      This action arises under the Americans with Disabilities Act of 1990 ("ADA") as codified, 42 U.S.C. § 12101 *et seq.*

**II.      JURISDICTION AND VENUE**

3.      The jurisdiction of this Court is invoked, and venue is proper in this district, pursuant to 28 U.S.C. § 1391 as Plaintiff's claims are substantively based on the Americans with Disabilities Act.

4.      All conditions precedent to the institution of this suit have been fulfilled, such as exhausted Administrative remedies and obtaining "Notice of Suit Rights" letters from the

U.S. Equal Employment Opportunity Commission ("EEOC"). Plaintiff has satisfied all jurisdictional prerequisites to the maintenance of this action.

## III.   PARTIES

5.   The Plaintiff herein is:

Sharon Michael
230 Snyder St.
2nd Floor
Orange, NJ  07050

6.   The Defendant herein is:

Canterbury at Cedar Grove Rehabilitation and Care Center LLC
398 Pompton Avenue
Cedar Grove, NJ 07009

It is further averred that Plaintiff has worked for Defendant, which is an incorporation, at 398 Pompton Avenue, Cedar Grove, NJ 07009.

## IV.   ADDITIONAL UNDERLYING FACTS

7.   Defendant, upon information and belief, employed 15 or more persons when the unlawful conduct alleged in this Complaint occurred.

8.   Plaintiff worked for defendant for 4 years as a Certified Nurse Assistant ("CNA").

9.   At all times relevant hereto, defendant was acting through its agents, servants, and employees, who were acting within the scope of their authority, course of their employment, and under the direct control of the defendant.

10.   At all times material herein, defendant is and has been a "person" and "employer" as defined under the ADA and is accordingly subject to the provisions of the Act.

## V.   STATEMENT OF THE CLAIMS

11.   Paragraphs 1 through 10 are incorporated by reference, as if set forth at length.

12.   Plaintiff alleges that prior to and continuing until on or about February 21, 2019, the defendant, through its agents, servants, and employees, subjected her to discrimination violative of the ADA. The facts in support of these allegations include, but are not limited to the following:

VI.   **UNDERLYING FACTS**

13.   Plaintiff alleges that defendant, through its agents, servants, and employees, subjected her to discrimination and retaliation on the basis of her disability.  These actions constitute violations of the ADA.

14.   Plaintiff worked for defendant for four years as a CNA.

15.   During her four years of employment with Defendant, Plaintiff performed her job functions in a dutiful and competent manner and at all times maintained at least a satisfactory performance level.

16.   On August 15, 2018, Plaintiff was in the course and scope of her employment when she fell while answering a call bell. She injured her bilateral knees.

17.   Plaintiff was diagnosed with bilateral patellofemoral chondritis status post contusions to both knees.

18.   Plaintiff subsequently sought workers' compensation benefits.

19.   As a result of his injury, Plaintiff was placed on light duty work restrictions consisting of no squatting or bending, walking only three hours per day and no lifting over 15 pounds.

20.   Plaintiff's restrictions were initially accommodated.

21.   On November 28, 2018 plaintiff was informed that the accommodations she had been working under since August 2018 were intended to be temporary and was asked to sign

paperwork to that effect. Prior to November 28, 2018 it was not communicated to her that her accommodations were temporary.

22.  On February 4, 2019 plaintiff was provided with a new, full light duty schedule. It was not communicated to her that this new schedule was temporary in nature.

23.  In the interim, defendant had requested that plaintiff undergo a Functional Capacity Evaluation to determine whether she required permanent restrictions. Plaintiff complied and the Functional Capacity Evaluation occurred on February 5, 2019- the day after plaintiff received her new light duty schedule.

24.  On February 5, 2019 the results from plaintiff's Functional Capacity Evaluation came back, the day after she was placed on a light duty schedule. The Functional Capacity Evaluation provided permanent lifting and squatting restrictions and recommended sedentary work.

25.  On February 21, 2019 defendant sent plaintiff a letter terminating her employment. The letter indicated defendant was not able to accommodate plaintiff's permanent restrictions.

26.  Plaintiff had been provided a light duty schedule the day before the Function Capacity Evaluation results were revealed, and had been working that schedule without incident.

27.  Upon information and belief, defendant continued to have light duty work available, as evidenced by plaintiff's new schedule.

28.  Plaintiff was capable of performing her light duty assignment and had been doing so successfully.

29.  Defendant never discussed the Functional Capacity Evaluation or its results with plaintiff prior to her termination.

30.  At no time was it communicated to plaintiff that her new light duty assignment, issued on February 4, 2019 was intended to be temporary, or that there was limited work available within her restrictions.

31.  Defendant is a large employer and, upon information and belief, has several sedentary job opportunities within plaintiff's qualifications.

32.  Defendant failed to engage plaintiff in the interactive process by simply terminating her. She was never advised that her light duty position was temporary, and she was never given the opportunity or any assistance in locating a job within her work restrictions. She was simply terminated.

33.  Plaintiff worked for defendant for four years without any significant disciplinary infractions.

## COUNT I

### DISCRIMINATORY TREATMENT AND DISCHARGE – ARISING UNDER THE AMERICANS WITH DISABILITIES ACT OF 1990
### SHARON MICHAEL v. CANTERBURY AT CEDAR GROVE REHABILITATION AND CARE CENTER LLC

34.  Paragraphs 1-33 are incorporated as if set forth at length.

35.  The Americans with Disabilities Act of 1990 prohibits discrimination on the basis of disability. Plaintiff alleges violations based on disability as set forth below;

36.  Plaintiff began his employment with defendant four years prior to her termination as a CNA.

37.  During her four years of employment with defendant, Plaintiff performed her job functions in a dutiful and competent manner and at all times maintained at least a satisfactory performance level.

38.  On August 15, 2018, Plaintiff was in the course and scope of her employment when she fell while answering a call bell. She injured her bilateral knees.

39.  Plaintiff was diagnosed with bilateral patellofemoral chondritis status post contusions to both knees.

40.  As a result of his injury, Plaintiff was placed on light duty work restrictions consisting of no squatting or bending, walking only three hours per day and no lifting over 15 pounds.

41.  Plaintiff's restrictions were initially accommodated. On November 28, 2018 she was advised the accommodations were temporary.

42.  Subsequently, on February 4, 2019 she was placed on a new light duty schedule. Upon information and belief there was no limitation on the light duty work available to plaintiff under this new schedule.

43.  Plaintiff was asked by defendant to undergo a Functional Capacity Evaluation on February 5, 2019. The Evaluation results recommended permanent restrictions for plaintiff.

44.  Plaintiff continued to work in her new light duty assignment.

45.  No one discussed the results of the Functional Capacity Evaluation with plaintiff or indicated her assignment was temporary during this time.

46.  Plaintiff was terminated on February 21, 2019 and informed her termination was due to the results of the Functional Capacity Evaluation.

47.  Plaintiff was not given the opportunity to discuss the results of the examination with anyone. Nor was she given the opportunity or guidance to seek sedentary employment with defendant.

48.  Upon information and belief the light duty work plaintiff had been performing remained available.

49.  Further, upon information and belief, defendant is a large employer with several sedentary positions available within plaintiff's qualifications.

50.  Prior to her termination plaintiff had no significant disciplinary infractions.

51.  Defendant discriminated against plaintiff on the basis of her disability and ultimately terminated her on the basis of her disability.

## PRAYER FOR RELIEF

52. Plaintiff incorporates paragraphs 1 through 51 as if set forth at length.

**WHEREFORE**, Plaintiff requests that this court enter judgment in her favor against the Defendant, and order that: Defendant compensate Plaintiff with back pay, at a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination; Defendant compensate Plaintiff with an award of front pay, if appropriate; Defendant pay to Plaintiff punitive damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses as allowable; Defendant pay to Plaintiff pre and post judgment interest, the costs of suit and attorney and expert witness fees as allowed by law; Defendant shall eliminate all unlawful discriminatory practices as well as remedy the discriminatory effect of past practices and procedures; and the Court shall award such other relief as if deemed just and proper, in law and/or equity, including injunctive relief if the Honorable Court deems said relief appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

**POND LEHOCKY, LLP**

By. _/s/ Erica A. Shikunov

Erica A. Shikunov
2005 Market Street
18th Floor
Philadelphia, PA 19103
P: 800-568-7500
F: 215-525-0811
E: eshikunov@pondlehocky.com